May it please the court, I'm Robert Jobe and I'm appearing pro bono today on behalf of the petitioner Jose Lucio Guevara. To establish that Mr. Guevara is subject to deportation, the government bears the burden of establishing by clear, convincing and unequivocal evidence that Mr. Guevara has been convicted of a controlled substance offense, other than a single offense involving possession for one's own use of 30 grams or less of marijuana. Did you get the handout that I presented where the two statutes are? That language is the first clause there in the handout. And it was enacted, made part of the Immigration and Nationality Act by the Immigration Act of 1990. The second clause in your handout was enacted by the Immigration Act of 1990 as well, the same legislation. That provision, it creates a personal use exception to the grounds of ineligibility for temporary protected status. That was a new status created by the Immigration Act of 1990. And as you can see there, that exception is limited to a single offense of, not involving, but of simple possession, not possession but simple possession of 30 grams or less of marijuana. That language from clause two, you're going to find that in five other places in the Immigration and Nationality Act, the exact same language in five different places in the INA. Those five places are set forth, there's a total of six, and footnote four in the board's decision of matter in Moncada. In matter of Moncada, however, the board said that notwithstanding the differing language between these two provisions, the two provisions are in fact, quote, interchangeable, the board says. And that clause one there on the handout, a single offense involving possession for one's own use of 30 grams or less of marijuana, actually means, according to the board, a single offense of simple possession of 30 grams or less of marijuana. Now, our view is that in equating these two phrases enacted at the same time and containing quite different language, the board violated basic principles of statutory construction. Because normally, when Congress uses particular language in one section of a statute and different language in another section of the same act, according to the Supreme Court, we must presume that it did so intentionally and we need to give effect to the different meanings. That basic principle, I think, governs this case. Because if Congress had wanted to limit the personal use exception in Section 237A2Bi to convictions consisting, quote, of simple possession, clause two, it could have and it would have said so expressly, as it did in Section 244, the section dealing with temporary protected status, and in five other sections of the INA. But it didn't do that. Instead of limiting Section 237A2B to offenses, quote, consisting of simple possession, clause two in the handout, it more broadly provided an exception for a single offense involving possession for one's own use. The word involving, obviously, is not defined by the INA, but if you consult any dictionary, and I consulted several, involving is defined not as consisting of, but rather including, containing as a part, having as a necessary feature. So it's our view that the plain meaning of the phrase an offense involving possession for one's own use in Section 237A2Bi means an offense which includes as a part possession for one's own use of a small amount, 30 grams or less, of marijuana. Now, obviously, I'm not suggesting that the personal use exception encompasses an individual who possesses 30 grams, planning on using personally 10 grams and then selling the rest, because that, obviously, would create a tension between this ameliorative provision and Section 101A43B of the Act, which treats as an aggravated felony any illicit trafficking in a controlled substance. So no sale is going to be covered by the exception here. But a single offense involving possession for one's own use clearly encompasses the hypothetical that we put forth in our papers, where an individual shares a marijuana cigarette with a friend. He uses a marijuana cigarette with another person. That is an offense involving one's own use. He's using it, although he's using it with a friend. And the issue, therefore, in this case is whether the Virginia statute, under which Mr. Guevara was convicted, encompasses that kind of conduct. And if you look at Section, page 241 of the administrative record, that lays out the Virginia statute that we're dealing with here. And the language that I'm interested in focusing in on, it's about halfway down the page there where it says, if such person proves that he gave, distributed, possessed. That language, what it says is that if the individual possessed with the intent to give less than 30 grams of marijuana, only as an accommodation to another person, and not to intent to profit thereby from any consideration received, and not intending that the recipient become addicted to the drug, he shall be guilty of a Class I misdemeanor. Mr. Guevara was convicted of a Class I misdemeanor. That language there clearly encompasses a situation where an individual possesses a small amount of marijuana with the intent to share it with a friend, use it together. And that use is clearly something that's covered by the ameliorative section here in 237A2BI. That section says you're not deportable if you've been convicted of a single offense involving possession for one's own use of 30 grams or less. This guy had less than 14 grams of marijuana. And there's nothing here to suggest that his conduct involved anything other than sharing a single marijuana cigarette with a friend, using it together. And as a result, it's our view that you have to conclude that this man's not deportable. The only other issue I want to address, if you don't have questions on that, is the issue of the mailbox rule, because the government maintains that that issue wasn't raised at the BIA. And I just want to point out that if you look at page 15 of the Florence Project's brief to the Board of Immigration Appeals, that second paragraph there on page 15, the one that begins second, the Florence Project, a pro bono agency that's, you know, way overtaxed, helping hundreds and hundreds of people, they did this brief for Mr. Guevara. They didn't specifically invoke the mailbox rule, but they said quite clearly, the board should consider the special difficulties faced by, pro se, detained respondents in delivering court documents before it affirms this rigid type of adherence to deadlines that the immigration judge engaged in. And it goes on to say, respondent depends on employees at the detention facility to deliver his legal documents to the court, a system which provides no assurances for timely delivery. That's the reason behind the mailbox rule, the prisoner mailbox rule. And if you look at page 139, which is the proof of service that was attached to the application for cancellation of removal, it says quite plainly that the document was provided to the housing counselor within the detention facility on February 26, 2007, that's two months before the thing was filed with the court. Under the prisoner mailbox rule, yeah, it would have to have been accepted as timely, and it's appropriate for the court to apply that rule in a case like this. Mr. Guevara was pro se. He doesn't have the ability to go walk over to the court and file it. He's dependent upon the individuals that work in the detention facility. He provided it to the appropriate person, the housing counselor. The housing counselor accepted it without making any alterations to the proof of service. It should be deemed timely filed. If we agree with you on issue one, do we reach issue two? No, Your Honor. Good morning, Your Honor. Catherine Clark on behalf of the government. Guevara's petition for review should be dismissed because the agency properly found that he's removable as an alien convicted of an offense relating to a controlled substance. By the plain language of the Virginia statute of conviction, Guevara's conviction was for distributing or giving away marijuana or possessing marijuana with the intent to distribute it or give it away, and this does not fit within the exception in the removal statute for possession for one's own use of 30 grams or less of marijuana. Guevara failed to confer jurisdiction on this court by raising a colorable constitutional claim or a genuine question of law. The immigration judge clearly informed Guevara when the court needed to receive his application for cancellation of removal, and the regulations permitted the judge to set and adhere to this deadline. Guevara's conviction --. Do you agree that the mailbox rule should apply in this case if properly raised? The mailbox rule should – the immigration judge was within his discretion if, first of all, the argument regarding the mailbox rule, even if properly raised, which we do not concede that it was. Yes, I said assuming properly raised. Even if it was properly raised, the argument concerning the mailbox rule is not a constitutional claim or a question of law. No, I'm asking for the substance of it. Do you agree that the mailbox rule applies? The – General, forget this case. You agree that the mailbox rule applies to incarcerated aliens and removal proceedings. I would not want to speculate regarding all cases involving incarcerated aliens. However, it is worth noting on that point that the immigration judge practice manual currently says that the mailbox rule specifically does not apply. And – Why shouldn't Houston be black and it's probably going to apply to incarcerated petitioners? The regulations permit the judge to set and extend filing deadlines for – in the exercise of the judge's discretion. And for the judge to set a date when an application is due in court is within the regulatory discretion granted. It seems to me, counsel, that if we have a mailbox rule for incarcerated individuals under other circumstances, I don't see any reason under the law that it should not apply in immigration proceedings. Indeed, I can see many reasons why it should apply even more vigorously. Because in these cases, we have many individuals, if not the majority of which, don't speak English. So they are entirely dependent on those who keep them in order to get their correspondence with the court or with the immigration service out in a timely fashion. So why would we penalize somebody who did so and then somebody just dropped the ball? So we just say, well, sorry. The simple fact is that Congress delegated that authority to the immigration judge. And the – to set those rules. And whether or not, as a policy matter – Congress didn't say you can't – the mailbox rule doesn't apply, right? No, but Congress did permit the attorney general to draft these sorts of regulations. And ACFR 1003.31c specifically leaves that matter to the discretion of the immigration judge. Now, here – It says specifically no mailbox rule? No. The immigration judge could have allowed the mailbox rule to apply if he had chosen to. So if you get one immigration judge that likes the mailbox rule, it applies. If you get another immigration judge who doesn't like the mailbox rule, it doesn't apply. The regulations do leave that up to the discretion of the immigration judge. And it is for precisely that. How can you have a floating statute of limitations that's variable by judge? Pardon? How can you have a floating statute of limitations that's just at the whim of any particular judge? You have rules. The regulations set forth the period. And either the mailbox rule applies, it would seem, to that or not. I mean, that's a procedural right. This is not a statute of limitations. It is an application filing deadline. And the distinct difference is that the immigration judge, in his ability to manage his own courtroom, can therefore set deadlines for the submission of applications to the court. And you think that due process would allow an immigration judge to say, your application is due the next five minutes. If you can't finish it by then, I'm going to deem it abandoned. The immigration judge here did not make any of that. No, I'm just asking a hypothetical question. Obviously, it didn't happen here. And I would not want to speculate regarding whether that would be a violation of due process in any way. The fact remains that in this case, the ---- Okay. Let me go back to a point you made, if you don't mind. The government's position is that it was not properly presented. But the issue of whether or not time was afforded was presented, you concede, right? I'm not sure I understand the question. Well, the question of whether or not the petitioner had enough time to file, given that his incarceration was raised, albeit in a cursory fashion, right? The petitioner did mention in his brief that he got confused as to the deadline, which interestingly is not the argument that he presents on appeal to the court. He doesn't say he got confused. He says, I filed it on time. And he abandons that argument that he got confused about the deadline and didn't have a writing implement, I believe, was his reasoning below for why he missed the deadline. Now he says that he missed the deadline because, in fact, he filed it on time. Right. But you're not arguing that he has to say mailbox rule in order to preserve the issue for appeal, are you? We would maintain that argument, however, even if ---- Let's take Houston v. Lack, where the mailbox rule was initiated in the first instance. They didn't identify the mailbox rule. They just said it was unfair for a petitioner's incarceration to be able to timely give the papers to the prison official and yet be deprived of a ---- accused of missing a filing deadline. They didn't label it a mailbox rule then. They just created it. So if it's preserved in Houston v. Lack, why isn't it preserved here? Petitioner here did not lay out the factors in such a clear fashion. I do see that it is a close case whether petitioner did raise that issue before the board. But the fact remains here that petitioner received both oral and written notice of the date  The immigration judge clearly confirmed Guevara's understanding that he, quote, must have these applications to this court by April 25, 2007. He did not state that they had to be filed by that date. He said that exactly they had to be in the court at that time, and Guevara conceded that he understood that that was the filing date. Indeed, he repeated it back to the immigration judge. So the due process concerns that may or may not arise regarding a five-minute issue, that sort of hypothetical, are simply not at issue here. So he files his petition, he gives it to the prison official, and the prison official doesn't file it on time. That is indeed what Guevara alleges occurred. Yes, and if that's so, why shouldn't we impose a mailbox rule as long as he takes some action within the period set by the judge? The board in the court in matter, excuse me, in O versus Gonzalez, noted that the board abused its discretion when it concluded that the petitioner in that case, that he, excuse me, that he had filed his notice of appeal late, and then the board said that it had no discretion to extend the deadline. Here the immigration judge recognized that he had discretion. The board remanded, or excuse me, the court remanded to the board to determine whether there were rare circumstances that would justify an exception to the filing deadline. There is nothing in the record that compels the conclusion that there are such rare circumstances in this case, and therefore the court should not conclude that petitioner, that the immigration judge was obligated to adhere to the mailbox rule. Moreover, the court simply lacks jurisdiction over the claim in the first instance because it is an abuse of discretion claim disguised as a constitutional claim. The issue of filing dates is committed to the immigration judge's discretion and under the regulations, and other circuits have concluded that the adherence to filing dates is reviewed for abuse of discretion. And you're almost out of time. Do you want to hit the other, discuss the first issue? With respect to the removability charge, as a preliminary matter, petitioner does concede that he was convicted. Therefore, under the Class I misdemeanor Virginia statute, he just conceded that in his argument, and for that reason he abandons his argument with respect to the document. With respect to the removal charge, the removal, petitioner does not make it clear where he would draw the line. Under his argument regarding of and involving and the distinction, suppose the distinction between those two terms, neither term would be limiting. And moreover, there would be no reason to draw a line between using marijuana and then using a small quantity of marijuana and then selling the rest of it as long as the aggregate did not add up to more than 30 grams. There seems to be no way for the exception in the removal statute to read in this way because the exception does indicate that it is for one's own use of 30 grams or less of marijuana, and that it applies to possession for one's own use. Additionally, the entire exception may be an ameliorative, the exception when considered as a whole may be ameliorative, but the phrase for one's own use is certainly limiting within the exception. Therefore, there's no need to read the for one's own use language as an ameliorative provision that must be somehow construed broadly. In this case, the for one's own use language is in fact limiting, and it therefore does not need to be read broadly in favor of the alien. The agency made a proper determination that Guevara was removable, and Guevara failed to raise a colorable constitutional claim or a question of law to preserve the Court's jurisdiction with respect to his application for cancellation. Therefore, if the Court has no more questions, I would recommend dismissal of the petition. Thank you, counsel. The reasons I set forth earlier, the phrase a single offense involving possession for one's own use can't be equated with simple possession. At the same time, I recognize it can't encompass sale, because that would truly create a tension between this provision and other provisions of the INA that make any sort of illicit trafficking a deportable offense. So the question is, what does it encompass? If it's more than simple possession but less than sale, what does it encompass? The obvious choice is sharing, using it with another person. Now, the Board said that would create a tension, because these six other provisions in the INA are all limited to simple possession. But all the six provisions that the Board was referring to, they all deal with grounds of inadmissibility or grounds of eligibility for certain forms of relief. And it makes sense that Congress would be more strict in setting forth requirements for people who are initially applying for an immigration status but be more lenient for people who have an immigration status and now are facing deportation. That's the situation that we have. The one exception here is in the grounds of deportation applicable to somebody like Mr. Guevara, who's a long-time permanent resident, 15 years as a green card holder. He's being treated more leniently by Congress. The exception that applies to him is a little bit broader than simple possession. It includes any single offense involving possession for one's own use, and that would encompass using it with another person. And, I mean, the realistic thing here is that that's how marijuana is often used. It's often used in a social setting. It's often used by sharing it with another person. Thank you, counsel. Thank you, Your Honor. Cases will be submitted and will be in recess for the morning.
judges: Thomas, Paez, Ezra